UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
TEXAS HOUSTON DIVISION

| | |
|---|---|
| ROSA HERNANDEZ, individually and as applicant to be dependent administratix of the ESTATE OF CHRISPTOHER AGUIRRE, DECEASED,<br>　　Plaintiff,<br><br>VS.<br><br>OFFICER R.T. VALENTA<br>OFFICER A.J. VALADEZ<br>OFFICER J.D. DEMETERIO<br>and the CITY OF HOUSTON,<br>　　Defendants. | CIVIL ACTION NO. _____<br><br><br>JURY DEMAND |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs, ROSA HERNANDEZ, individually and as applicant to be dependent administrator of ESTATE OF CHRISTOPHER AGUIRRE, complains of Defendants R.T. VALENTA, A.J. VALADEZ, AND J.D. DEMETERIO and the CITY OF HOUSTON as follows:

### Introduction

1.　On or about April 27, 2020, Houston Police Department Officers R.T. VALENTA, A.J. VALADEZ, AND J.D. DEMETERIO, (hereinafter "Defendants"), shot and killed CHRISTOPHER AGUIRRE without any lawful justification. Before Defendants Valenta, Valadez, and Demetrio shot CHRISTOPHER AGUIRRE—a 26-year-old father and college student— he was going through was described as a "suicidal episode" according to Mr. Aguirre's neighbors. Although Aguirre was visibly unstable, he had been committing no crimes at all. Nonetheless, Defendants Valenta, Valadez, and Demetrio chose to confront

1

CHRISTOPHER AGUIRRE and shot him without warning. That confrontation ended with CHRISTOPHER AGUIRRE being murdered by Defendants.

2. Because of their status as a police officer, Defendants have not been held accountable for their actions. No criminal charges were ever filed, and no officer has been removed from the Houston police force in relation to this unjustified killing.

3. Tragically, the shooting of an unarmed citizen by a member of the Houston Police Department was not an isolated incident. Instead, the City of Houston has experienced a rash of such police-involved shootings of unarmed individuals, and particularly Mexican-Americans, in such a manner that they are de- facto City policy. Nonetheless, the City of Houston has not done anything to address the pervasive shooting of unarmed individuals by its officers. And, like Defendant Officers, the City has not been held accountable for its actions (and inactions) concerning the shooting of unarmed individuals by its officers.

4. This action, brought under 42 U.S.C. § 1983, seeks justice—and accountability—for the wrongful, unjustified killing of Christopher Aguirre and seeks to deter the wrongful, unjustified shootings of others at the hands of the Houston Police Department.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331.

6. Venue is proper under 28 U.S.C. § 1391(b). The events giving rise to the claims asserted herein all occurred within this district, and, upon information and belief, all or most of the parties reside in Harris County.

## PARTIES

7. The Estate of Christopher Aguirre represents the property and legal interests of decedent Christopher Aguirre.

8. Rosa Hernandez, the mother of Christopher Aguirre, is an applicant to become dependent administratrix of the Estate of Christopher Aguirre. The Estate also includes any legal interests arising out of Christopher Aguirre's death that Rosa Hernandez may have. The Estate brings those claims on her behalf.

9. Defendant R.T. VALENTA is a Houston Police Department officer who, at all times relevant to this action, was acting under color of law and within the scope of his employment as a Houston police officer.

10. Defendant A.J. VALADEZ is a Houston Police Department officer who, at all times relevant to this action, was acting under color of law and within the scope of his employment as a Houston police officer.

11. Defendant J.D. DEMETERIO is a Houston Police Department officer who, at all times relevant to this action, was acting under color of law and within the scope of his employment as a Houston police officer.

12. Defendant City of Houston is a Texas municipal corporation that operates the Houston Police Department (the "HPD" or "Department"), which in turn sets city-wide policy for the conduct of police officers employed by the Department.

## FACTUAL ALLEGATIONS

**Defendants Valenta, Valadez, and Demeterio are HPD Officers acting under the "color of law"**

13. On April 27, 2022, Defendants Valenta, Valadez, and Demeterio arrived at 7910 Lane Street, Houston, Texas 77029, Christopher Aguirre's residence, as full-time officers for the Houston Police Department responding to a disturbance call.

14.     In so doing, Defendants were working to enforce all federal, state, and city laws at 7910 Lane Street with approval from the Houston Police Department.

15.     To that end, Defendants wore their Department- issued uniforms, HPD badges or insignia, armed with their service weapons, and acting in a full capacity as an HPD officers.

**Christopher Aguirre is Shot By Defendants Valenta, Valadez, and Demetrio**

16.     On or about April 27, 2020, Christopher Aguirre initiated a disturbance call with the Houston Police Department which led to several officers arriving at his home.

17.     Christopher Aguirre lived on 7910 Lane Street Houston, Texas 77029 and was loved by his community, including the neighbors that witnessed his death.

18.     When Christopher was confronted by Defendants Valenta, Valadez, and Demetrio at his residence, he was holding his legally owned while shouting obscene things.

19.     As Christopher was standing in his own front yard and not exhibiting threats or harm to anyone, he had a right to hold his weapon. Due to this, Defendant Officers had no reasonable suspicion to believe that a crime had occurred or was about to occur.

19.     At this time, instead of the Defendant Officers doing what they were both hired and trained to do, it was Christopher's neighbors that attempted to calm him down and de-escalate the situation.

20.     Observing that Christopher had not discharged his weapon nor had he pointed his weapon at any person, Defendants Valenta, Valadez, Demetrio failed to provide any verbal commands instructing Christopher to drop his firearm.

21.     Impatiently and out of nowhere, Defendants Valenta, Valadez, and Demetrio fired their service weapon at Mr. Aguirre, striking him several times in the head.

22. Although the officers never heard Christopher discharge his weapon or point his gun in the direction of any person, Defendants decided to use unconstitutional deadly force against Mr. Aguirre.

23. Upon information and belief, video recordings depict the unconstitutional deadly force that Defendants Valenta, Valadez, Demetrio used against Christopher Aguirre.

24. Upon information and belief, the video recordings of the incident show that when Christopher Aguirre was holding his weapon, it was in an non-threatening manner.

25. Unsatisfied, Defendants Valenta, Valadez, Demetrio decided to end the life of Mr. Aguirre in front of his loving neighbors.

26. This shooting was unlawful. At no point during Christopher Aguirre's encounter with Defendants Valenta, Valadez, and Demetrio did Christopher take any action that would have justified Castro's use of deadly force.

27. At no point during Christopher Aguirre's encounter with Defendants Valenta, Valadez, and Demetrio did Christopher pose an imminent threat of death or serious bodily harm sufficient to justify the use of deadly force by Defendants Valenta, Valadez, Demetrio.

**Christopher Aguirre Dies From Defendants Valenta, Valadez, Demetrio's Gunshot Wound**

28. In the wake of this unjustified shooting, Christopher Aguirre did not immediately die.

29. In these moments, Christopher Aguirre experienced unspeakable pain due to the gunshot wound he had suffered

30. Nonetheless, after shooting him Defendants Valenta, Valadez, and Demetrio did nothing to save Christopher Aguirre's life. The Defendants provided no medical treatment whatsoever.

31. Instead—adding insult to fatal injury—Defendants drew their weapons at Christopher's stepfather who came out of the residence after overhearing the shooting that had just occurred. It is obvious from their actions that the Defendants lacked empathy in regards both Christopher and his loved ones.

32. Christopher Aguirre died from the gunshot wounds he suffered at the hands of Defendants Valenta, Valadez, and Demetrio.

**Defendants Valenta, Valadez, and Demetrio Attempts to "Cover-Up" His Unlawful Shooting**

33. After the shooting, Defendants Valenta, Valadez, and Demetrio told authorities and investigators that they shot Christopher Aguirre because they thought Christopher had pointed his weapon at others purportedly causing them to fear for the safety of the observants involved.

34. Defendants Valenta, Valadez, and Demetrio claim's that Christopher Aguirre had used his weapon in a threatening manner was a lie that Defendants told to attempt to justify their unlawful acts.

35. Defendants Valenta, Valadez, and Demetrio knew that falsely claiming Christopher acted as such would likely be sufficient to absolve them of criminal liability for this homicide.

36. Defendants Valenta, Valadez, and Demetrio's accounting of events is extremely implausible, includes falsehoods, and belied by the external evidence.

37. For example, upon information and belief, Defendants Valenta, Valadez, and Demetrio's account to authorities investigating the shooting incident is at odds with, and contradicted by, video captured from witnesses at the scene.

### The City of Houston Failed To Discipline Defendants Valenta, Valadez, and Demetrio

38. Despite all of the inconsistencies and implausible version of events provided by Defendants Valenta, Valadez, and Demetrio, their employer—the City of Houston—failed to discipline the officers in any meaningful way.

39. On information and belief, Defendant officers were not even placed on administrative leave. In fact, to date, Defendant officers have not been, disciplined by the HPD for killing Christopher Aguirre.

40. The shooting of Christopher Aguirre—a clearly unstable Mexican-American individual—was not an isolated incident for the Houston Police Department. He was not given the benefit that is given to his white counterparts that suffer from mental instability. His suicidal conduct was ignored and was ultimately what led to his death.

41. Upon information and belief the Houston Police Department's policy and practices were the moving force behind the constitutional violations inflicted against Christopher.

### Plaintiffs' Damages

42. The Defendants' actions imposed substantial harm on Christopher Aguirre during the period of time after which he was shot by Defendants Valenta, Valadez, and Demetrio until Christopher Aguirre ultimately passed away. The amount of excruciating pain Christopher Aguirre felt during those final moments is unquantifiable.

43. In addition, Christopher Aguirre, a struggling 27-year-old, lost the opportunity to live the rest of his life. Christopher Aguirre lost the opportunity to turn his life around. These damages are tragic and substantial.

44. Rosa Hernandez, Christopher's mother, has experienced monumental loss as well. Rosa Hernandez was close with her son and will never again have this relationship nor the opportunity to see Christopher grow. In addition, Rosa has been further harmed by the actions subsequent to the shooting—both by the failure of any authorities to bring any accountability to Defendants Valenta, Valadez, and Demetrio, but also by the substantial life changes that she has endured in wrapping up Mr. Aguirre's estate.

### Count I - 42 U.S.C. § 1983

### Excessive Deadly Force

45. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

46. As described in the preceding paragraphs, Defendants Valenta, Valadez, and Demetrio's actions toward Christopher Aguirre violated Baker's constitutional rights, including but not limited to those under the Fourth and Fourteenth Amendments of the United States Constitution.

47. The misconduct described in this Count was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of others. In addition, the misconduct and excessive force described in this Count "shocks the conscience."

### Count II – 42 U.S.C. § 1983

### Unlawful Seizure/Detention

48. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

49. In the manner described in this Complaint, Defendants Valenta, Valadez, and Demetrio violated Plaintiff's constitutional rights, causing him damage by detaining him with the

absence of probable cause or reasonable suspicion in violation of the Fourth Amendment of the United States Constitution.

50. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Christopher Aguirre's constitutional rights.

### Count III— 42 U.S.C. § 1982

### Equal Protection

51. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

52. In the manner described in this Complaint, Defendants Valenta, Valadez, and Demetrio violated Plaintiff's constitutional rights intentionally subjecting him to unlawful, unequal treatment on the basis of his race in violation of the Fourteenth Amendment of United States Constitution.

53. Defendants Valenta, Valadez, Demetrio's conduct created discriminatory effect by targeting Christopher Aguirre for police action based on his race.

54. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Christopher Aguirre's constitutional rights.

### Count IV—42 U.S.C. § 1983

### Failure to Provide Medical Care

55. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

56. As described in the preceding paragraphs, Defendants Valenta, Valadez, Demetrio's actions toward Christopher Aguirre violated Baker's constitutional rights, including but not limited to the Fourth and Fourteenth Amendments of the United States Constitution due

to his failure to render any medical care to Christopher Aguirre after having detained him by shooting him several times.

57. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Christopher Aguirre's constitutional rights.

### Count V—42 U.S.C. § 1983

### Municipal Liability: Monell

58. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

59. As described in the preceding paragraphs, the misconduct described in Counts I-IV was undertaken under the policy and practice of the City of Houston, such that Defendant City of Houston is also liable, in that:

a. As a matter of both policy and practice, the City of Houston encourages, and is thereby the moving force behind, the very type of misconduct at issue in Counts I-IV by failing to adequately train, supervise, control and discipline its officers such that its failure to do so manifests deliberate indifference;

b. As a matter of both policy and practice, the City of Houston facilitates the very type of misconduct at issue in Counts I-IV by failing to adequately investigate, punish, and discipline prior instances of similar misconduct, thereby leading Houston police officers to believe their actions will never be meaningfully scrutinized. Accordingly, in that way, the City of Houston directly encouraging future uses of excessive deadly force, unlawful detention, failures to intervene, and race-based policing such as those Plaintiff complains of;

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Houston Police Department violate the constitutional rights of

individuals in a manner similar to that alleged by Christopher Aguirre in Counts I-IV on a regular basis, yet the Houston Police Department investigates officer misconduct and makes findings of wrongdoing in a disproportionately small number of cases.

60. As a result of the City of Houston's policies and practices, and the unjustified and unreasonable conduct of the Defendants Valenta, Valadez, Demetrio, Plaintiff has suffered injuries, including severe emotional distress and ultimately death.

### Count VI—State Law Claim Assault & Battery

61. Each paragraph of this Complaint is incorporated as if restated fully herein.

62. As described above, Defendants Valenta, Valadez, and Demetrio used force against Christopher Aguirre, resulting in harmful or offensive contact.

63. In using force against Christopher Aguirre, Defendants Valenta, Valadez, and Demetrio intended to cause physical pain or injury, to be insulting, and/or to cause offensive contact.

64. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

65. As a proximate result of this misconduct, Christopher Aguirre suffered severe physical pain and emotional distress, and anguish.

### Count VII—State Law Claim Wrongful Death

66. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

67. All Defendants are liable for damages arising from Defendants Valenta, and Valadez, Demetrio's unlawful conduct that caused Christopher Aguirre's death in that Christopher Aguirre's injuries and death were caused by Castro's wrongful act, neglect,

carelessness, unskillfulness, or default while Defedants were acting as agents of the City of Houston.

68. Defendants' actions as described in this Complaint were a substantial factor in bringing about Christopher Aguirre's death, and without those actions, the death of Christopher Aguirre would not have occurred.

69. Rosa Hernandez, Christopher Aguirre's mother suffered loss of companionship and mental anguish as a result of the wrongful death of Christopher Aguirre.

70. Rosa Hernandez suffered from pecuniary loss as a result of the wrongful death of Christopher Aguirre.

### Count VIII—State Law Claim Survival Action

71. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

72. Plaintiff Rosa Hernandez is the process of becoming the legal representative authorized to pursue these claims against Defendants.

73. Prior to his death, Christopher Aguirre suffered serious personal injuries including but not limited to severe pain and emotional distress during the period after he was shot but before he died from the gunshot wounds Defendants Valenta, Valadez, and Demetrio inflicted upon him.

74. All Defendants liable for these damages arising from Defendants Valenta, Valadez, and Demetrio's unlawful conduct that caused Christopher Aguirre's severe pain and emotional distress in that Christopher Aguirre's injuries were caused by (or were substantially caused by) Defendants' wrongful act, neglect, carelessness, unskillfulness, or default while they were acting as agents of the City of Houston.

75. Defendants' actions as described in this Complaint were a substantial factor in bringing about the injuries described in this Count, and without those actions, these injuries would not have occurred.

### Count IX—State Law Claim Intentional Infliction of Emotional Distress

76. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

77. In the manner described more fully above, by causing the death of Christopher Aguirre, the Defendants intended to cause both physical and emotional distress.

78. In so doing, Defendants Valenta, Valadez, and Demetrio's conduct was extreme and outrageous and caused Christopher Aguirre severe, disabling physical distress, emotional distress, and ultimately death.

79. The misconduct described in this Count was intentional and undertaken with malice, willfulness, and reckless indifference to the rights of others.

### Count X—State Law Claim Municipal Liability

80. Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

81. Public entities must pay any tort judgment for damages for which employees are liable within the scope of their employment activities for mandatory functions of the municipality. 102 V.T.C.A. § 102.0215.

82. During all times relevant to this complaint, Defendants Valenta, Valadez, and Demetrio was an employee of the Houston Police Department, who acted within the scope of his employment in committing the acts described herein.

### Count XI—State Law Claim

### Respondeat Superior

83. Each paragraph of this Complaint is incorporated as if restated fully herein.

84. In committing the acts alleged in the preceding paragraphs, Defendants Valenta, Valadez, and Demetrio acted at all relevant times within the scope of their employment on behalf of the Houston Police Department.

85. These Defendants are principals liable for all torts, including Counts VI-IX above, committed by their agents.

## Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against the Defendants as follows:

1. A money judgment against Defendants Valenta, Valadez, and Demetrio, for compensatory, special, and punitive damages and punitive damages together with costs and disbursements, including reasonable attorneys' fees, under U.S.C. § 1988 and prejudgment interest.

2. A money judgment against Defendant City of Houston, for compensatory, special, and punitive damages and punitive damages together with costs and disbursements, including reasonable attorneys' fees, under U.S.C. § 1988 and prejudgment interest.

3. For such other and further relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

CALHOUN MEREDITH, PLLC

*/s/ Treshaun D. Meredith*
Treshaun D. Meredith
State Bar No.: 24091389
Southern District of Texas Bar No. 3215606
tmeredith@calhounmeredith.com
5444 Westheimer Road, Suite 1250
Houston, Texas 77056
Phone: 832.430.6203
Fax: 346.223.1244

**ATTORNEY FOR PLAINTIFFS**